UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL ONEIL RUFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-cv-00453-GZS |
| | ) | |
| JOSEPH FITZPATRICK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDED DECISION**

In this action, Plaintiff, an inmate at the Maine State Prison, seeks to recover damages for alleged violations of his constitutional rights during his incarceration. The matter is before the Court on Defendants' Motion to Dismiss (ECF No. 12) and Plaintiff's Motion to Amend Complaint (ECF No. 15).[1]

As explained below, following a review of the pleadings, and after consideration of the parties' arguments, I recommend that the Court grant Plaintiff leave to amend his complaint[2] and that the Court grant in part and deny in part Defendants' motion to dismiss.

**BACKGROUND**

The facts set forth herein are derived from Plaintiff's complaint, which facts are deemed true when evaluating the motion to dismiss.[3] *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12,

---

[1] The Court referred the motions for report and recommended decision.

[2] Although a motion to amend is within the magistrate judge's authority, *Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9 n.2 (1st Cir. 2000), because the motion relates at least in part to an assessment of Defendants' motion to dismiss, which is addressed in this recommended decision, I concluded that it was appropriate to issue a recommended decision on the motion, to afford the Court, in the event a party objects to this recommended decision, the opportunity to apply the same standard of review for each of the recommended determinations herein.

[3] Because this recommended decision includes a recommendation that the Court grant Plaintiff leave to amend, the decision also references some assertions contained in the motion to amend. The reference to the facts as alleged

16 (1st Cir. 1998). Although neither party has introduced documentary evidence in connection with the pending motions, in their motion to dismiss, Defendants reference one of the prison policies.

In June 2014, two officers searched a cell that Plaintiff shared with three other inmates at the Bolduc Correctional Facility. The officers found a cellphone under Plaintiff's mattress. Plaintiff is African American. One of Plaintiff's roommates, who is white, represented that the phone was his and that he had placed the phone beneath Plaintiff's mattress, which is near an outlet. As alleged by Plaintiff, "for obvious reasons" the officers did not accept this representation and asserted that they knew the phone belonged to Plaintiff. As the result of this incident, Plaintiff was "once again" called over to "the ACO building, where Director Beal and the two officers "tried to intimidate" Plaintiff with threats to write him up and transfer him. Plaintiff "stood his ground" and denied ownership of the phone. One of the officers stated that he would still receive a write up because the phone was under his mattress.

Although the roommate who claimed ownership of the phone was soon to be released, he prepared an affidavit asserting that the phone belonged to him and not to Plaintiff. In July 2014, the roommate was released from custody and shortly thereafter Plaintiff was written up for the cellphone violation. Plaintiff alleges that Director Beal and the officers "made good on [their] threat" and violated his constitutional rights at that time. According to Plaintiff, later in July, Plaintiff was escorted to Director Beal's office for a meeting with two prison guards, who asserted that contraband was found with Plaintiff's name attached. The guards then placed Plaintiff in handcuffs, and transported him to the Maine State Prison.

---

should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

In August 2014, Plaintiff received a "write up" that reflected that the contraband was located inside the window sill of the shared cell at Bolduc Correctional Facility. Plaintiff contends that he was singled out as responsible rather than his three roommates. Eventually, the charge against Plaintiff was dismissed because the officers involved did not produce any contraband evidence and never wrote a summary report. According to Plaintiff, the charge was retaliatory, and as the result of the retaliation, he spent time in maximum security at the Maine State Prison without his contact visits. Plaintiff alleges that Defendants' actions violated his first, fifth, and fourteenth amendment rights.

On August 5, 2014, while at the Maine State Prison, Plaintiff filed two grievances against Director Beal, Assistant Director Russell Worcester Jr., and Sergeant Steve "Wigclzikski" (according to Defendants, Widgzinski), in which grievances he alleged that the allegations against him and the write ups were false. On August 26, Plaintiff filed another grievance, in which he complained that he had not received a response to his initial grievance. On September 11, 2014, Plaintiff received two of his three grievance forms, which were signed by Sergeant William Martin, who had contacted Plaintiff for informal resolution. The forms reflected that the grievances could not be resolved. A week later, Plaintiff received two grievance forms signed by Sergeant Martin, who wrote that the grievances were dismissed for failure to attempt an informal resolution. Additionally, on September 11, Assistant Director Worcester dismissed the August 5 grievances citing Plaintiff's failure to attempt an informal resolution.

At some point, Plaintiff wrote to Deputy Commissioner Jody Breton to advise that he had been wrongfully accused and subjected to a retaliatory transfer. In response, Deputy Commissioner Breton informed Plaintiff that he had failed a urine screen in the spring, that he was found with contraband (i.e., the cellphone) in the Bolduc Correctional Facility, and that he was

transferred to the Maine State Prison because he had failed to adjust to the Bolduc Correctional Facility. Plaintiff maintains that the Deputy Commissioner's assertions are erroneous because he was never found guilty of any of the alleged violations. According to Plaintiff, in October 2014, he learned that two other inmates who had been transferred to the Maine State Prison based on charges that were not substantiated were returned to their original facility or transferred to another minimum security facility.

Plaintiff filed his Complaint on November 10, 2014.[4] On April 9, 2015, after Defendants filed their motion to dismiss, Plaintiff filed a motion to amend his complaint (ECF No. 15). In his motion, Plaintiff maintains that an amendment is warranted because he had not sufficiently identified the defendants or described his claims. Among other things, Plaintiff evidently wants to assert a claim based on his contention that as an African American, he is a member of a protected class.

## DISCUSSION

Through their motion to dismiss, Defendants argue that the decision to transfer Plaintiff did not constitute a due process violation or retaliation because Plaintiff did not engage in a protected activity. In addition, Defendants contend that Plaintiff has failed to assert any facts that would support an equal protection claim, and that jurisdictional impediments preclude Plaintiff's official capacity damage claims. Finally, Defendants argue that Plaintiff has not alleged adequate grounds for supervisory liability.

---

[4] In his Complaint, Plaintiff requests an award of damages in the amount of $25,000 against the Department of Corrections, and $3,000 against each of the individual defendants. He also seeks an order that he be returned to the Bolduc Correctional Facility, and asserts that if he has to reapply "to go back to a minimum facility I would like to be awarded [an] additional $100.00 a day" for each day that he has been away from the Bolduc Correctional Facility.

A review of the pleadings reveals that Plaintiff alleges claims based on rights protected under the due process, equal protection, and speech and petition clauses of the United States Constitution. Plaintiff thus asserts claims under the federal civil rights statute, 42 U.S.C. § 1983.

As explained below, Plaintiff has not asserted a due process claim, but has alleged facts that could plausibly support equal protection and retaliation claims.

### A.  Plaintiff's Motion to Amend

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a litigant to amend a pleading "as a matter of course" subject to certain time constraints. However, when a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required in order to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'").

Plaintiff does not include with his motion a proposed amended complaint. Rather, Plaintiff evidently seeks to amend his complaint to assert that "he is a member of a protected class African American [and] that actions taken against him by the Defendants were capricious [and] retaliatory in nature, [and] denied him due process." (Plaintiff's motion, ¶ 4.) I recommend that the Court allow the amendment to include this assertion, and consider the assertion in the Court's assessment of Defendants' motion to dismiss.

**B.     Defendants' Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted."  In its assessment of a motion to dismiss, courts must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom."  *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)).  To overcome the motion, a plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim(s) at issue.  *Id.*  The relevant question when assessing plausibility "is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'"  *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 569 n.14 (2007)).

*1.     Section 1983 and the Eleventh Amendment*

In his Complaint, Plaintiff does not distinguish between official capacity and personal capacity claims.  In the context of the motion to dismiss, the Court assumes that Plaintiff asserts personal capacity claims to the extent that he requests monetary relief.

An official capacity claim is effectively a claim against the State itself.  *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989).  Because a state is not a "person" within the meaning of § 1983 and because § 1983 does not expressly abrogate the immunity provided to states under the Eleventh Amendment of the U.S. Constitution, section 1983 does not authorize a claim against the states.  *Id.* at 64; *see also Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 124 (1st Cir.2003) ("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its

officials acting in an official capacity."). In other words, although Plaintiff has properly named individual defendants in this case rather than the Department of Corrections or the State of Maine, as a matter of law, Plaintiff cannot recover the damages ($25,000) or the monetary sanction ($100 daily) that he requests from the Department of Corrections. Plaintiff, therefore, has not asserted an official capacity claim.[5]

### 2. *Due process*

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. As an inmate in a state prison, Plaintiff has interests that are protected by the Due Process Clause of the Fourteenth Amendment. To state a due process claim, however, Plaintiff must allege that he was subjected to an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Where the deprivation of liberty or property does not rise to that level, the mere violation of prison procedural policies by prison officials does not give rise to a constitutional violation. *Id.*

Plaintiff alleges a disciplinary transfer between state facilities based on false charges and irregularities in the handling of his resulting prison grievances. Plaintiff asserts that the transfer resulted in his assignment to a maximum security facility. Under certain circumstances, a transfer to a maximum security facility can constitute an atypical and significant hardship. *See Wilkinson v. Austin,* 545 U.S. 209, 223 – 24 (2005) (discussing the particular conditions imposed at an Ohio supermax facility). However, Plaintiff has alleged no facts that would constitute an atypical and significant hardship. Plaintiff, therefore, has not stated a due process claim.

---

[5] To the extent that Plaintiff seeks an award of damages against the individual Defendants, Plaintiff must assert facts that could support a plausible inference that the individual Defendants are personally responsible for the alleged deprivation of Plaintiff's constitutional rights.

### *3. Equal protection*

The Fourteenth Amendment Due Process Clause requires the same treatment for similarly situated persons. Disparate treatment based on race is "typically impermissible" and violates the Equal Protection Clause unless it is narrowly tailored to serve a compelling state interest. *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 10 (1st Cir. 2013). To state an equal protection claim based on racial discrimination, a plaintiff must allege facts that could support an inference that a defendant treated him differently because the defendant's purpose was to discriminate against the plaintiff based on race. *Hernandez v. New York*, 500 U.S. 352, 360 (1991).[6]

Here, Plaintiff has alleged that he is African American and that the officers believed that he was responsible for the cellphone and for other contraband despite the possibility that one of his roommates could have been responsible. He also has alleged that one of his former roommates, who is white, attempted to take responsibility for the cell phone, but the officers did not accept his assertion of responsibility. Essentially, Plaintiff asserts that the individual Defendants did not believe his account, and chose to sanction him because of his race rather than discipline a white individual who assumed responsibility for the contraband. In short, Plaintiff asserts an equal protection claim with sufficient detail to provide Defendants with notice of the claim and to permit a response. *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir. 2011).

### *4. Retaliation*

In the prison context, to establish a claim of first amendment retaliation, an inmate must allege (1) that the inmate engaged in conduct that is protected by the First Amendment; (2) that a defendant took adverse action against the inmate because of the prisoner's protected conduct; and

---

[6] Alternatively, if a plaintiff maintains that an equal protection violation is based on some other impermissible consideration, the plaintiff must assert facts that would support an inference that a defendant acted adversely to the plaintiff because of the impermissible consideration. *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995).

(3) that the adverse action would deter an inmate of ordinary firmness from exercising his or her First Amendment rights. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999).

Defendants argue that Plaintiff's allegations do not make it clear "what conduct of the plaintiff provoked … alleged retaliation," particularly as Plaintiff was found not guilty of the disciplinary charges. (Motion to Dismiss at 6.) Plaintiff alleges that he objected verbally to the decision to charge him for contraband violations and that his transfer to Maine State Prison was retaliatory. Plaintiff also alleges that he filed grievances while at the Maine State Prison and maintains that, unlike other transferred inmates for whom charges were dismissed, he remained at the Maine State Prison after his charges were dismissed.

In this Circuit, the filing of a prison grievance has been included within activity that is considered protected. *Hannon*, 645 F.3d at 48 ("The plaintiff, in filing his own grievances and legal actions, plainly engaged in protected activity.").[7] Although the First Circuit has not directly determined whether a verbal assertion of innocence or of unlawful treatment would also be construed as protected activity in the prison context, the Seventh Circuit has observed that the form of expression is not material to the constitutional analysis. *See Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("We are also unconvinced that the form of expression – i.e., written or oral – dictates whether constitutional protection attaches."). The Seventh Circuit's reasoning is persuasive. In this case, as alleged, there was both a verbal protest and some later written grievance

---

[7] Both of the cases cited by the *Hannon* Court involved allegations of retaliation for instituting court proceedings. *Bounds v. Smith,* 430 U.S. 817, 821 (1977); *Ferranti v. Moran,* 618 F.2d 888, 891 (1st Cir. 1980). It is not universally accepted that filing a prison grievance is constitutionally protected speech or petition activity. *See*, *e.g.*, *Daye v. Rubenstein*, 417 Fed. App'x 317, 319 (4th Cir. 2011) ("[P]risoners do not have a constitutional right of access to the grievance process. ... Daye's verbal complaints to prison officials were essentially a grievance, and thus, contrary to Daye's assertions, his expression of dissatisfaction was not constitutionally protected.") (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)).

activity. In particular, Plaintiff alleges that he filed grievances after his disciplinary transfer and that, unlike other prisoners transferred to the Maine State Prison, he was not returned to a lower-security facility after the dismissal of the underlying disciplinary charges. At this stage of the proceedings, Plaintiff's complaint can be construed to assert that he remained at the Maine State Prison as the result of his grievance activity, which assertion is sufficient to state a plausible retaliation claim.[8]

Defendants nevertheless argue that dismissal is appropriate because determinations regarding an inmate's custody level, housing status, and ability to participate in certain programs do not constitute punishment when the determinations are made in the interest of safety, security, and the proper management of a facility. (Motion to Dismiss at 5.) Without commenting on the merit of Defendants' argument, because Plaintiff has alleged that Defendants made and maintained the transfer in retaliation, and because at this stage of the proceedings the Court must accept the accuracy of Plaintiff's allegations, Defendants' contention that the determinations were made in the interest of safety, security, and the proper management of the facility is not controlling.

### 5. *Supervisory liability*

A supervisory prison official is only liable for the violation of a prisoner's federal rights if the official participates in the acts that constitute the violation. A plaintiff thus must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). "Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her

---

[8] Because the exact nature of Plaintiff's earlier verbal statements is not entirely clear, if Plaintiff's retaliation claim was based solely on his verbal statements, Plaintiff's retaliation claim might be susceptible to dismissal. However, if the Court adopts the recommendation on Defendant's motion regarding Plaintiff's retaliation claim, I recommend that the Court permit Plaintiff's claim based on the verbal statements to proceed as well, and address the claim after further development of the record.

constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'" *Ocasio–Hernandez v. Fortuno–Burset,* 640 F.3d 1, 16 (1st Cir. 2011) (quoting *Rodríguez–García v. Miranda–Marín,* 610 F.3d 756, 768 (1st Cir. 2010)). "Because precise knowledge of the chain of events leading to the constitutional violation may often be unavailable to a plaintiff at the pleading stage of the litigation," *id.,* courts often must turn to "judicial experience and common sense," *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009), to make "a contextual judgment about the sufficiency of the pleadings," *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 48 (1st Cir. 2009).

Defendants argue that Commissioner Fitzpatrick and Deputy Commissioner Breton are not appropriate defendants in this litigation. They note that Plaintiff has not alleged that the Commissioner engaged in any specific conduct, and that the Deputy Commissioner only responded in writing to Plaintiff's grievances. (Motion to Dismiss at 9.)

A review of Plaintiff's complaint reveals that Plaintiff has in fact failed to allege that the Commissioner engaged in any actionable conduct. Dismissal of the Commissioner as a party is thus appropriate.

With respect to Deputy Commissioner Breton, Plaintiff alleges that she responded to a letter he wrote in which he raised allegations of wrongful accusations and a retaliatory transfer. As alleged, Breton advised Plaintiff that a review of his file reflected that he failed a urine test in the spring (months prior to the incidents described in Plaintiff's complaint), and introduced a cellphone to the Bolduc Correctional Facility, which reflected a failure to adjust for which failure he was sent to the Maine State Prison. A supervisory official can be responsible for failing to address a constitutional violation after the official is informed of the alleged violation. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("The personal involvement of a supervisory

defendant may be shown by evidence that: … the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong ….").  In this case, Plaintiff alleges that he informed the Deputy Commissioner of the alleged violation, that the Deputy Commissioner has the ability to correct the situation, and that the Deputy Commissioner failed to address the issue. Plaintiff's allegations support a plausible claim against the Deputy Commissioner.

## CONCLUSION

Based on the foregoing analysis, I recommend that the Court grant Plaintiff's Motion to Amend (ECF No. 15).  I further recommend that the Court grant in part and deny in part Defendants' Motion to Dismiss (ECF No. 12).  Specifically, I recommend that the Court (1) dismiss Plaintiff's claims for monetary damages against Defendant Department of Corrections and against the individual Defendants acting in their official capacities; (2) dismiss Plaintiff's due process claim, and (3) dismiss Plaintiff's claims against Commissioner Fitzpatrick.  The recommendation is that the Court otherwise deny Defendants' Motion to Dismiss.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 12th day of August, 2015.