UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL ONEIL RUFFIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:14-cv-00453-GZS |
| | ) | |
| JOSPEH FITZPATRICK, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

In this action, Plaintiff Daniel Oneil Ruffin, an inmate at the Maine State Prison, alleges Defendants violated his constitutional rights.  In particular, Plaintiff contends Defendants discriminated against him on the basis of race in connection with disciplinary charges and retaliated against him when he engaged in conduct protected by the First Amendment.

The matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 30.)  Plaintiff opposes the motion.  (Plaintiff's Opposition, ECF No. 33.)  Following a review of the pleadings and the summary judgment filings, and after consideration of the parties' arguments, I recommend the Court grant Defendants' motion.

**SUMMARY JUDGMENT RECORD**

At summary judgment, the Court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to evidence of record. Federal Rule of Civil Procedure 56(c) and District of Maine Local Rule 56(b) – (d) require the specific citation to record evidence.  In addition, Local Rule 56 establishes the manner by which parties must present their factual statements and the evidence on which the statements depend.  A

party seeking summary judgment thus must file, in addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement.  D. Me. Loc. R. 56(b), (f).

A party seeking to oppose a properly filed and supported motion for summary judgment must file an opposing statement of material facts that admits, denies, or qualifies the factual statements made by the moving party.  D. Me. Loc. R. 56(c).  Unless a statement is admitted, the opposing party must provide a citation to evidence of record that supports the opposing statement.  *Id.*  If a party fails to do so, the moving party's factual statements "shall be deemed admitted."  D. Me. Loc. R. 56(f).  Moreover, pursuant to Local Rule 7(b), parties are expected to file an objection to a motion if they contest the motion, and unless they do so are "deemed to have waived objection."

The Court, however, "may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days."  *NEPSK, Inc. v. Town of Houlton,* 283 F.3d 1, 7 – 8 (1st Cir. 2002).  Instead, the Court must assess whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In the context of summary judgment, this Court has observed that a prisoner's nonconforming summary judgment submission should be reviewed by the Court and that the facts set forth in a verified complaint or prisoner affidavit should be considered.  *Clarke v. Blais*, 473 F. Supp. 2d 124, 128 (D. Me. 2007).  In this case, therefore, the summary judgment record consists of the Local Rule 56 record and Plaintiff's sworn statements of record.

## FACTS

Plaintiff Daniel Ruffin is a prisoner currently incarcerated at the Maine State Prison (MSP). (Defendants' Statement of Material Facts (DSMF) ¶ 1, ECF. No. 31.)  In 2014, Plaintiff was incarcerated at the Bolduc Correctional Facility (BCF), a minimum custody facility.  (*Id.* ¶ 2.) BCF is an unfenced facility, and the prisoners at BCF are in the least restrictive custody level of the Department of Corrections and are afforded the greatest number of privileges.  To maintain minimum custody, prisoners at BCF are expected to obey Department rules and policies and to avoid disciplinary write-ups.  (*Id.* ¶ 3.)

On April 2, 2014, Plaintiff was written up for Trafficking, a Class A disciplinary violation. The process began when Plaintiff was subjected to a drug test based on a note from another prisoner stating that Plaintiff was using drugs.  Plaintiff tested positive for buprenorphine (Suboxone).  (*Id.* ¶ 5.)  Defendant Russel Worcester, assistant director of BCF, conducted a disciplinary hearing, at which hearing Plaintiff admitted the violation.  (*Id.* ¶ 6.)

On July 8, 2014, Officer Clayton Knight conducted a search of the cell shared by Plaintiff and three other inmates.  When Officer Knight stripped the sheets from Plaintiff's bunk, a cell phone fell to the floor.  Upon further inspection, Officer Knight discovered a cell phone charger plugged into a wall outlet next to Plaintiff's bunk with a cord running under the bunk. (*Id.* ¶¶ 7 – 8.)

According to Defendants, Plaintiff was subjected to discipline because the contraband phone was found in his bunk.  (*Id.* ¶ 8.)  At the time, Plaintiff, who is African American, had three roommates, one who was African American and two who were white.  (*Id.*)  Plaintiff asserts that one of his white roommates admitted that he owned the cell phone.  (Ruffin Affidavit ¶ 4, ECF No. 33–1.)  Plaintiff maintains that he was not charged in connection with the cell phone until the

day after his cellmate was released from the facility, which was 10 days after the incident.  (*Id.* ¶ 5.)

At Plaintiff's initial, informal disciplinary proceeding, Defendant Beal presented evidence that a frequently called out-of-state telephone number listed on the cell phone was a telephone number frequently called by Plaintiff using the BCF telephone system.  Defendant Beal played a recording made from the facility telephone system of a call Plaintiff made to the number.  The recording revealed a conversation between Plaintiff and a female.  When he was confronted with this evidence, Plaintiff continued to deny that the cell phone belonged to him.  (DSMF ¶ 9.)

The disciplinary charge proceeded to a formal hearing.  Because Defendant Worcester, who usually served as the disciplinary hearing officer, was involved in the interview with Plaintiff, Defendant Beal designated Defendant Sgt. Martin, who was not involved in the disciplinary write-up or investigation, to act as the hearing officer.  Defendant Martin dismissed the charge for lack of evidence when another prisoner testified that the cell phone belonged to him.[1]  Under the Department's disciplinary policy, the discipline was expunged from Plaintiff's record and the disciplinary record was deleted.  (*Id.* ¶ 10.)

On July 29, 2014, the Department conducted a facility-wide shakedown of BCF.  Officer Dube conducted a search of the window frame and sill in Plaintiff's shared cell and discovered a lighter, a small packet containing three sections of buprenorphine sublingual tape (Suboxone), rolling papers, and a pill.  (*Id.* ¶ 11.)  Plaintiff was targeted for discipline because several prisoners, acting as confidential informants, identified Plaintiff as the owner of the contraband.  (*Id.* ¶ 12.)  Plaintiff contends Defendants never produced for him statements from any inmate who asserted the contraband belonged to Plaintiff, and he maintains that Defendants could not establish whether

---

[1] According to Plaintiff, his cellmate provided an affidavit in which the cellmate asserted that he owned the cell phone. (Ruffin Affidavit ¶ 8.)

4

the contraband had been in the window frame for "weeks, months, or even a year."  (Ruffin Affidavit ¶ 10.)

After finding the contraband, two members of the search team directed Plaintiff into a room for questioning.  When they read Plaintiff his Miranda rights, Plaintiff became extremely agitated and raised his voice such that Defendant Beal could hear Plaintiff from his office.  One of the officers reported to Defendant Beal that Plaintiff was out of control and that a more secure environment was necessary.  Defendant Beal contacted the Department's classification director, Scott McCaffery, and requested an emergency reclassification and transfer to the Maine State Prison.  The classification director approved Defendant Beal's request, and Plaintiff was immediately taken to the Prison.  (DSMF ¶ 13.)

Plaintiff received a write-up for possession of contraband as a result of the July 29 incident. Because he was transferred to MSP, in accordance with Department policy, the disciplinary hearing on the infraction was to be conducted at MSP.  Due to an oversight, a hearing was not scheduled for several months.  Because a disciplinary hearing would have been untimely at the point officials at MSP discovered the oversight, the officials dismissed the infraction and, pursuant to the Department's disciplinary policy, the disciplinary record was expunged and documentation of the disciplinary write-up was destroyed.[2]  (*Id.* ¶ 14.)

Plaintiff filed three grievances after his transfer to MSP.  (DSMF ¶ 16.)  Because Plaintiff complained in the grievances about events that occurred at BCF, Department policy dictated that the grievance review officer at BCF handle the grievances.  (*Id.*)

On August 8, 2014, BCF received the first grievance, which focused on the officers' attempt to interview Plaintiff on July 29.  Defendant Worcester, the grievance review officer at

---

[2] Plaintiff contends that a hearing was conducted in August 2014, and he was found not guilty.  (Ruffin Affidavit ¶ 13.)

BCF, dismissed the grievance because Plaintiff first did not attempt an informal resolution. (*Id.* ¶ 17.) In his second grievance, Plaintiff argued that he was unfairly targeted in the July 29 incident. Because the grievance named Defendant Worcester as a potential respondent, Defendant Beal designated Defendant Martin to act as grievance review officer. Defendant Martin dismissed the grievance because Plaintiff again did not attempt an informal resolution before filing the grievance. (*Id.* ¶ 18.) Plaintiff's third grievance, received at BCF on September 9, 2014, repeated Plaintiff's complaints that he was wrongfully accused of possessing contraband, unnecessarily transferred to MSP, and retaliated against. (*Id.* ¶ 19.) Once again, as Defendant Worcester was mentioned in the grievance, Defendant Beal designated Martin to act as grievance review officer. Defendant Martin denied the grievance because it was duplicative of an earlier grievance and because it was filed well beyond the 15-day time limit. (*Id.*)

Plaintiff's re-classification to medium custody and transfer to MSP was approved by Classification Director Scott McCaffery and then-Deputy Commissioner Cynthia Brann. (*Id.* ¶ 20.) Director McCaffery reviewed Plaintiff's classification on November 14, 2014, January 17, 2015, July 13, 2015, and February 3, 2016. Each time, McCaffery decided to maintain Plaintiff on medium custody at MSP. The decisions were based on a scoring system that considers such factors as the seriousness of crime of conviction, criminal history, and behavior during incarceration. According to Director McCaffery, the Department will consider an incident alleged in a dismissed disciplinary write-up because the underlying conduct could be important to the safety of the inmate community. (*Id.* ¶ 21.) As part of the classification process, McCaffery considered Plaintiff's history of serious and violent criminal conduct, including Plaintiff's conviction and sentence of incarceration for Class A Robbery. (*Id.* ¶ 22.) McCaffery also determined that Plaintiff was involved in several incidents of misbehavior while at BCF. (*Id.*)

McCaffery maintains that the filing of a grievance does not influence his classification decisions. (*Id.* ¶ 23.)

In April 2015, the Department changed its classification policy to preclude the placement at minimum custody facilities of prisoners who have been charged with or convicted of a sex offense.  Because Plaintiff has been convicted of two violent sexual assaults in another state, he is now ineligible for placement in a minimum security facility.   (*Id.* ¶ 22.)

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).  "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy,* 782 F.3d 73, 77 (1st Cir. 2015).  If the court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial worthy controversy exists and summary judgment must be denied to the extent there are supported claims.  *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)).  Unsupported claims are properly dismissed.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

DISCUSSION

On September 23, 2015, the Court dismissed all of Plaintiff's claims except Plaintiff's claims that the disciplinary proceedings at BCF, the decision to transfer Plaintiff to MSP, and the decision to retain Plaintiff at MSP were motivated by racial bias and/or retaliatory animus. (ECF Nos. 19, 23.) The remaining claims are based on alleged violations of the Equal Protection Clause and the First Amendment.

**A.     Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment prohibits racial discrimination. *Aponte-Ramos v. Alvarez-Rubio*, 783 F.3d 905, 908 (1st Cir. 2015). To prove his case, Plaintiff must demonstrate that when Defendants charged him with prison violations and transferred him to the Maine State Prison, they were motivated by "racially discriminatory intent or purpose." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266. Plaintiff must "tender competent evidence that a state actor intentionally discriminated against [him] because [he] belonged to a protected class." *Alexis v. McDonald's Rest. of Mass., Inc.*, 67 F.3d 341, 354 (1st Cir. 1995).

The mere fact that Plaintiff is African American is not proof that Defendants' actions were motivated by Plaintiff's race. *Id.* Moreover, a "showing of a racially disproportionate impact is not sufficient." *Austin v. Town of Dexter*, 552 F. Supp. 2d 38, 43 (D. Me. 2008) (citing *Vill. of Arlington Heights*, 429 U.S. at 265). Consequently, the fact that two white inmates shared

Plaintiff's cell and were not charged with a contraband violation is not proof of discriminatory purpose. In the context of prison disciplinary proceedings, there are a number of legitimate reasons to distinguish among inmates. Prison officials must assess individual culpability based on the evidence presented. The fact that a disciplined inmate is a member of a protected class alone is insufficient to sustain an equal protection claim. Indeed, in this case, another of Plaintiff's cellmates was not charged despite the fact he was of Plaintiff's race. Presumably, the other inmate was not charged because the phone was not found in that cellmate's bunk.

Plaintiff nevertheless argues that intentional discrimination is apparent because Defendants cited him for possession of the phone even though a white cellmate asserted ownership of the phone. The record evidence, however, included not only the location of the phone (i.e., in Plaintiff's bed), but also the presence in the phone's call register of a number frequently called by Plaintiff. Competent evidence, therefore, supports the charge despite the fact another inmate claimed ownership of the phone. Particularly given the competent evidence, the simple fact that a white cellmate attempted to take responsibility for the phone is insufficient to establish the requisite discriminatory intent.

Plaintiff's equal protection claim regarding the July 29, 2014, incident in which Suboxone and other contraband were found in his cell is also unsupported by the summary judgment record. The charge was based in part on information provided by other inmates and Plaintiff's history of Suboxone possession while incarcerated. Although Plaintiff complains that Defendants did not provide him with statements from the informants, the record lacks any evidence from which a fact finder could reasonably conclude that Defendants' decision not to provide the information was based on Plaintiff's status as a member of a protected class. Similarly, the record contains no evidence to suggest that Defendants' decision to transfer Plaintiff to MSP because of his escalating

conduct or the decision not to return him to BCF following the dismissal of the July 29 charge was in any way racially motivated.[3]

In short, the record lacks any direct or circumstantial evidence that discredits Defendants' explanations for their actions. More importantly, Plaintiff has failed to present any direct or circumstantial evidence to support his contention that Defendants' actions were motivated by race.

## B.     First Amendment Retaliation

Prison administrators may not transfer an inmate in retaliation for the inmate's exercise of a First Amendment right, such as the right to petition the government for redress of grievances. *Hannon v. Beard*, 645 F.3d 45, 47 – 48 (1st Cir. 2011). "Because prisoner retaliation claims are 'easily fabricated[ ] and ... pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." *Hannon,* 645 F.3d at 48 (quoting *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir. 2003)).

First Amendment retaliation claims are evaluated by means of a burden-shifting analysis. Initially, the burden is on Plaintiff to "demonstrate that he engaged in protected First Amendment conduct and that this conduct 'was a substantial or motivating factor'" behind Defendant's decision to subject Plaintiff to an adverse action. *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 302 (1st Cir. 2014) (quoting *Welch v. Ciampa,* 542 F.3d 927, 936 (1st Cir. 2008)). If Plaintiff succeeds in this showing, the burden shifts to Defendants "to persuade the factfinder that [they] would have made the same decision even if the illegitimate reason had not been a factor." *Reyes-Orta v. Puerto Rico*

---

[3] In his complaint, Plaintiff asserts that two other prisoners were returned to other facilities after being transferred to the Maine State Prison because the charges for which they were transferred were dismissed. (Complaint at 9.) Plaintiff, however, has not provided any information concerning the two individuals. Even if the Court assumes that they were white, the record contains no evidence of their crimes of conviction, prison disciplinary history, or any other information to suggest that they were treated differently from Plaintiff because of race.

*Highway & Transp. Auth.*, 811 F.3d 67, 73 (1st Cir. 2016) (distinguishing the "*Mt. Healthy* defense" from the *McDonnell Douglas* burden-shifting analysis used in discrimination cases).[4]

To the extent Plaintiff contends that the July 29 incident and his transfer were in retaliation for Plaintiff's successful challenge to the cell phone charge, Plaintiff has failed to identify any evidence to support the claim.  First, although Plaintiff asserts in his complaint that during an interrogation, prison officials told him to put his hands behind his back and then transferred him to MSP, Plaintiff has failed to controvert the record evidence that establishes he was transferred because of his agitated state upon questioning about the contraband found in his cell.  Furthermore, Plaintiff has cited no circumstantial or direct evidence to suggest that Defendants were not acting based on other inmates' statements when they inspected Plaintiff's cell.  On this record, Plaintiff's assertion that the July 29 charge was retaliatory constitutes speculation and surmise, and as such is insufficient to overcome Defendants' summary judgment motion.  *Hannon,* 645 F.3d at 48.

Defendants do not dispute that Plaintiff's written grievance activity is protected by the First Amendment.  *See id.* ("The plaintiff, in filing his own grievances and legal actions, plainly engaged in protected activity.").  Defendants also do not dispute that the decision to keep a prisoner at MSP rather than a minimum security facility such as BCF could deter an inmate of ordinary firmness from engaging in First Amendment activity.  *See id.* at 49 ("[T]he plaintiff's transfer from a medium-security prison in Pennsylvania to a maximum-security prison in Massachusetts constituted an adverse action.").  For Plaintiff's grievance-related retaliation claim to proceed, the record must include evidence that could reasonably support a determination that Defendants' decision to retain Plaintiff at MSP was motivated by Plaintiff's grievance activity.

---

[4] *See also Reyes-Orta*, 811 F.3d at 74 n.3, and *compare Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286 – 87 (1977) *with McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 – 04 (1973).

The summary judgment record reflects (1) that Scott McCaffery, a non-defendant, made the decision to retain Plaintiff at MSP, and, (2) according to Mr. McCaffery, he did not consider Plaintiff's grievance activity when making the classification decision.[5]  Plaintiff has failed to produce or otherwise cite any factual evidence to refute or in any way contradict Mr. McCaffery's assertions (1) that he, and not any of the Defendants, made the classification decision, and (2) that Plaintiff's grievance activity was not considered in the decision-making process.  Any conclusion to the contrary, therefore, would be speculative.

Finally, Plaintiff alleges that after Plaintiff wrote to her to report race discrimination and retaliation, Defendant Jody Breton, Deputy Commissioner of the Department of Corrections, should have intervened on his behalf and directed that he be returned to a minimum security facility.  (Ruffin Affidavit ¶ 14.)  Simply stated, because the record does not support a finding that the disciplinary charges, transfer, and classification decisions were the product of retaliatory animus or racial bias, Defendant Breton cannot be found liable for failure to intervene.  *Rivera v. Rhode Island*, 402 F.3d 27, 38-39 (1st Cir. 2005); *Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir. 1995); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994).

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' Motion for Summary Judgment (ECF No. 30), and enter judgment in favor of Defendants on Plaintiff's remaining claims.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought,

---

[5] Because the record does not disclose that any of the BCF Defendants had the authority to transfer Plaintiff from MSP, Plaintiff's claim for any grievance-related retaliation fails against Defendants Beal, Martin, Silvenkski, Wigclzikski, and Worcester.

together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 25th day of May, 2016.